IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA LOUISE ELLENBERGER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No. 16-1315 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) ) ) ) |
| Defendant. | ) ) |

AMBROSE, Senior District Judge

# OPINION and ORDER OF COURT

## SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 15 and 17]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 16 and 18]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment [ECF No. 17] and denying Plaintiff's Motion for Summary Judgment. [ECF No. 15].

## I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. Plaintiff applied for DIB and SSI on or about September 2,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

2012. [ECF Nos. 9-7 & 9-8].[2] In her applications, she alleged that since September 3, 2011, she had been disabled due to lower back pain, carpal tunnel left hand, left foot problems, depression, and stress. [ECF No. 9-8, at 217]. Administrative Law Judge ("ALJ") David F. Brash held a hearing on June 4, 2014, at which Plaintiff was represented by counsel. [ECF No. 9-3, at 38-74]. Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 66-71. In a decision dated September 5, 2014, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 9-2, at 17-33]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and, the Appeals Council denied Plaintiff's request for review. [ECF No. 9-2, at 1-4]. Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 15 and 17]. The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to

---

[2] Plaintiff filed a previous application for SSI and DIB in September 2010, which was denied by an ALJ on or about September 2, 2011. [ECF No. 9-4, at 75-96].

resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of

demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B. WHETHER THE ALJ IMPROPERLY DISREGARDED THE MEDICAL OPINIONS OF PLAINTIFF'S TREATING AND EXAMINING PHYSICIANS**

At Step Two of his analysis, the ALJ found that Plaintiff had the following severe impairments: bilateral plantar fasciitis; migraine headaches; left carpal tunnel syndrome; thoracic compression/status post-vertebroplasty; lumbar degenerative disc disease and spondylosis; discogenic syndrome; lower extremity radiculopathy; chronic pain syndrome; avoidant and dependent personality disorder with paranoid and phobic factors; major depressive disorder, panic disorder with agoraphobia, anxiety disorder, adjustment disorder with mixed anxiety and depressed mood, bipolar disorder, and intellectual disability. [ECF No. 9-2, at 19-20]. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that Plaintiff could only stand for one hour, cumulatively, within an eight hour workday; never climb a ladder, rope, or scaffold; never crawl, kneel, stoop, crouch, or balance; only occasionally bend; only occasionally push, pull, or operate foot controls with the lower extremities; only occasionally climb ramps and stairs; would require a sit-stand option, at the work station, with intervals no more frequent than every thirty minutes; must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards; was limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks; was limited to no work-related contact with the

public, only occasional and superficial interaction with co-workers, and no more than occasional supervision; and was limited to a low-stress work environment, which means no production rate pace work, but, rather, goal oriented work with only occasional and routine changes in work setting. [ECF No. 9-2, at 23-30]. The ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform, including surveillance systems monitor, document preparer, and table worker. Id. at 30-32.

Plaintiff argues that the ALJ erred when weighing the medical opinion evidence. [ECF No. 16, at 12-15]. Specifically, she asserts that the ALJ improperly rejected the reports of Drs. Robert Hornsby, Gerald Street, Clifford Vogan, Julie Uran, and Robert Eisler, all of whom treated and/or examined Plaintiff for her physical or mental impairments. Id. After careful review, I find that Plaintiff's argument is without merit.

The amount of weight accorded to medical opinions is well-established. Generally, the opinions of a claimant's treating physicians are entitled to substantial and, at times, even controlling weight. 20 C.F.R. §§ 404.1527(c), 416.927(c).[3] To be entitled to controlling weight, however, the treating physician's opinion must be well supported by medical techniques and consistent with the other substantial evidence of record. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). To determine the weight of a treating physician's opinion, the ALJ may consider a number of factors, including consistency, length of treatment, corroborating evidence, and supportability. 20 C.F.R. §§ 404.1527, 416.927. As the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)

---

[3] Although the regulations governing the evaluation of medical evidence were recently amended, the version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. §§ 404.1527, 416.927 (2017); 20 C.F.R. §§ 404.1520c, 416.920c (2017).

5

> (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927[(c)](2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ may choose who to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009).

Regarding Plaintiff's physical impairments, Dr. Hornsby, Plaintiff's primary care physician, completed a two-page Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities on August 12, 2011, shortly prior to the alleged onset date. [ECF No. 9-16 at 595-596, Ex. B19F]. The statement indicated that Plaintiff could frequently lift and carry ten pounds or less, occasionally lift and carry 20-25 pounds, and never lift or carry 50 pounds or more. Id. at 595. Dr. Hornsby further opined that Plaintiff could stand and walk less than two hours and sit less than 6 hours. He checked that Plaintiff experienced fatigue; required rest periods during the day; suffered from moderate pain; and occasionally needed to elevate her legs during an eight-hour work day. Id. He stated that Plaintiff was not limited in pushing or pulling; could occasionally climb and never balance, stoop, kneel, crouch, or crawl; was limited in reaching and handling; and had unlimited dexterity, seeing, hearing, and speaking. Id. at 596. Dr. Hornsby found no environmental restrictions. Id.

One-time consultative examiner Dr. Vogan examined Plaintiff on or about January 15, 2013 and completed a similar Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities on that same date. [ECF No. 9-12 at 395-402, Ex. B7F]. Dr. Vogan's statement indicated that Plaintiff could lift and carry 2-3 pounds frequently and 20 pounds occasionally; was limited to 1 hour or less of standing in an eight-hour work day; and had no

6

limitation on sitting.  Id. at 397.  He stated that Plaintiff's ability to push and pull was limited in both upper and lower extremities and that she also was limited in her ability to reach, feel, and see.  Id. at 397-398.  Dr. Vogan opined that Plaintiff could occasionally bend and never kneel, stoop, crouch, balance, or climb.  Id. at 398.  He found no limitations with respect to handling, fingering, hearing, speaking, tasting/smelling, or continence, and indicated environmental restrictions only with respect to heights and moving machinery.  Id.

The ALJ game "some weight" to both Dr. Hornsby's and Dr. Vogan's opinions.  [ECF No. 9-2, at 29-30].  The ALJ stated, however, that Dr. Vogan's conclusions regarding Plaintiff's upper extremity functioning were not supported by the record evidence and, therefore, a limitation to lifting and carrying at the sedentary exertion level would fully accommodate Plaintiff's restrictions stemming from carpal tunnel syndrome in her left hand and wrist.  Id. at 29 (citing Exs. B7F, B17F, and B10F). The ALJ similarly found that Dr. Hornsby's conclusions regarding Plaintiff's postural limitations, need to elevate her legs, and reaching and handling limitations were inconsistent with the record evidence.  Id. at 29-30 (citing Exs. B10F, B14F, and B19F).

With respect to Plaintiff's mental impairments, treating psychiatrist Gerald Streets filled out a three-page Pennsylvania Department of Public Welfare Employability Assessment check-box form on March 22, 2013, on which he checked that Plaintiff was "temporarily disabled – less than 12 months" for depression NOS.  [ECF No. 9-16, Ex. B18F].  Dr. Streets listed the period of the temporary disability as December 14, 2012 through December 1, 2013.  Id.  He checked that his assessment was based upon clinical history and a December 14, 2012 evaluation.  Id. Consultative psychologist, Julie Uran, evaluated Plaintiff and completed a medical source statement on November 21, 2012, indicating that Plaintiff had no restrictions understanding, remembering, or carrying out short, simple instructions; slight restrictions on making judgments on simple work-related decisions; and moderate restrictions on understanding, remembering, and carrying out detailed instructions, due to depression, anxiety, and agoraphobia.  [ECF No. 9-12,

7

Ex. B5F]. Dr. Uran also opined that Plaintiff had no restrictions interacting appropriately with supervisors; slight restrictions on responding appropriately to changes in a routine work setting; moderate restrictions interacting appropriately with the public and co-workers; and marked restrictions on responding appropriately to work pressures in a usual work setting. Id. Finally, consultative psychiatrist, Robert Eisler, M.D., evaluated Plaintiff on May 22, 2014 and opined that she had slight restrictions understanding and remembering short, simple instructions; moderate restrictions on carrying out short, simple instructions; marked restrictions on understanding and remembering detailed instructions, and making judgments on simple work-related decisions; and extreme restrictions on carrying out detailed instructions. [ECF No. 9-13, Ex. B12F]. Dr. Eisler also indicated that Plaintiff had slight restrictions interacting appropriately with co-workers and following work rules; moderate restrictions on interacting appropriately with the public, responding appropriately to changes in a routine work setting, and maintaining attention/concentration; and marked restrictions on interacting appropriately with supervisors, responding appropriately to work pressures in a usual work setting, functioning independently, behaving in an emotionally stable manner, and demonstrating reliability. Id. In his psychiatric evaluation, Dr. Eisler further opined that Plaintiff would "be unemployable for the next year or more." Id.

The ALJ gave little weight to Dr. Street's March 2013 opinion that Plaintiff was temporarily disabled, explaining that the opinion was provided on a check-box form without any explanation or detailed analysis of Plaintiff's specific functional limitations. [ECF No. 9-2, at 29]. The ALJ further noted that the opinion was inconsistent with Dr. Street's own treatment notes. Id. The ALJ also gave little weight to Dr. Eisler's May 2014 opinion on the grounds that it was based largely on Plaintiff's subjective complaints and self-reported problems, and was not consistent with her generally unremarkable mental status examinations and treatment notes. Id. at 28-29. The ALJ gave some weight to Dr. Uran's November 2012 opinion. Id. at 28. Specifically, he found that Dr. Uran's conclusion that Plaintiff had moderate to marked limitations responding

appropriately to work pressure in a usual work setting was not consistent with the record evidence. Id. He gave great weight, however, to Dr. Uran's conclusions that Plaintiff had no difficulty understanding, remembering, and carrying out short, simple instructions; moderate difficulty interacting appropriately with the public and coworkers; and slight problems making judgments on simple work-related decisions. Id.

Citing the treating physician doctrine, Plaintiff faults the ALJ's assessment of these medical opinions, arguing, without citation to the record, that he "improperly rejected" the opinions and instead should have given them "substantial weight" because "their reports are clearly supported by all of the other evidence of record including the examining and treating medical providers." [ECF No. 16, at 14-15]. She further declares, again without citation, that each of the doctors' reports "individually support[s] the conclusion that Plaintiff is disabled" and "there are no reports by any examining or treating physician that Plaintiff is not disabled." Id. at 15.

Plaintiff's arguments are unpersuasive. Contrary to her suggestion that the ALJ "substitute[d] his own judgment for uncontroverted medical opinions," the ALJ properly followed the dictates of 20 C.F.R. §§ 404.1527, 416.927, and S.S.R. 96-2p with respect to evaluating medical opinions, including citation to substantial record evidence that the portions of the physicians' reports at issue were inconsistent with and/or unsupported by the record. For example, in discounting Dr. Vogan's conclusions regarding Plaintiff's upper extremity limitations, the ALJ pointed to Dr. Hornsby's treatment notes indicating full joint motion in all extremities in March 2014 and treatment notes from Kelly Kay, D.O., who also examined Plaintiff in March 2014 and found normal fine motor movements, no upper extremity neurological signs, and no weakness. [ECF No. 9-2 (citing Exs. B10F, B17F)]. The ALJ also cited a normal June 2014 nerve conduction study, a lack of any diagnostic testing confirming carpal tunnel problems, and the lack of any carpal tunnel releases or upper extremity surgeries. Id. With respect to Dr. Hornsby's conclusions regarding Plaintiff's need to elevate her legs and reaching, handling, and

postural limitations, the ALJ noted that such limitations were inconsistent with treatment records showing back pain and chronic pain under good or fair control; no problems with gait or ambulation; full joint motion; and normal fine finger and fine motor movements. Id. at 29-30 (citing Exs. B10F & B14F). The ALJ also noted that Dr. Hornsby's assessments were inconsistent with negative EMG testing in June 2014, the lack of any corrective lumbar or back surgeries since a December 2013 thoracic vertebroplasty, and a lack of any foot or hand surgeries or consistent treatment for plantar fasciitis or carpal tunnel syndrome. Id.

In discussing the mental health opinions, the ALJ noted that Dr. Street's opinion was inconsistent with his own treatment notes, which contained generally unremarkable mental status examinations, no referrals for inpatient care, and no references to frequent or debilitating panic attacks. [ECF No. 9-2 at 29 (citing Exs. B8F, B9F, and B18F)]. The ALJ further pointed out that Dr. Street's only GAF assessment of Plaintiff, dated January 2013, was 55, indicating only moderate symptoms. Id. (citing Ex. B8F).[4] Moreover, it is well-established that "check-the-box" forms such as the DPW form that Dr. Street completed are inherently suspect and are "weak evidence at best." See Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993); Grogan v. Comm'r of Soc. Sec., 459 F. App'x 132, 138 n.7 (3d Cir. 2012). In support of his decision to assign little weight to Dr. Uran's opinion that Plaintiff had moderate to marked limitations responding appropriately to work pressure in a usual work setting, the ALJ cited inconsistent psychiatric progress notes containing largely unremarkable mental status examinations. [ECF

---

[4] The GAF scale is used by clinicians to report an individual's overall level of functioning. See Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003). A GAF of 21-30 indicates behavior that "is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment . . . OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." See American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000) ("DSM-IV-TR"). A GAF of 31-40 indicates "some impairment in reality testing or communication . . . OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood." Id. A GAF of 41-50 denotes Aserious symptoms (e.g., suicidal ideation . . . ) . . . OR any serious impairment in social, occupational, or school functioning." Id. A GAF from 51-60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." Id. A GAF from 61-70 reflects "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships." Id.

No. 9-2 at 28 (citing Exs. B3F, B5F, B6F, B7F, B8F & B9F)]. He noted that Dr. Uran's remaining conclusions, to which he gave great weight, were consistent with Dr. Uran's own examination of Plaintiff showing good eye contact and hygiene and no other significant clinical findings; the mental health treatment records generally showing a stable mood; and the lack of any inpatient treatment since her onset date. Id. In assigning Dr. Eisler's opinion little weight, the ALJ noted numerous inconsistencies with the other evidence of record, including treatment notes and Dr. Uran's report reflecting generally unremarkable mental status examinations; the lack of evidence of psychiatric hospitalizations and emergency room visits for acute symptoms; and primary care physician notes that Plaintiff's depression was stable and under good control. Id. (citing Exs. B3F, B6F, B8F, B9F, B12F, and B17F). The ALJ discounted Dr. Eisler's GAF score of 40 as an outlier, citing the above exhibits and also noting that all other GAF scores in the record ranged between 55 and 60, indicating moderate to almost mild symptoms. Id. at 28-29.

In addition, the ALJ did not disregard the medical opinions at issue in their entirety. Rather, he included numerous restrictions related to Plaintiff's physical and mental impairments in his RFC finding. Id. at 23. The ALJ even chose to give Plaintiff the benefit of the doubt in certain instances, adopting, for example, Dr. Vogan's significant postural limitations even though those limitations were inconsistent with treatment notes indicating that Plaintiff's back pain was under fair or good control. Id. at 29.

As the above citations demonstrate, the ALJ did not, as Plaintiff suggests, substitute his own judgment for *uncontroverted* medical opinions. Rather, consistent with the regulations, he pointed to substantial record evidence showing a lack of supportability and consistency – key factors relevant in the weighing of medical opinions. See 20 C.F.R. §§ 404.1527, 416.927. He also included all limitations supported by the record in his RFC finding and explained his

11

reasoning sufficiently to allow meaningful review. Accordingly, I find no error in this regard.[5]

C. **WHETHER THE ALJ IMPROPERLY DETERMINED PLAINTIFF'S RFC**

Plaintiff takes issue with the ALJ's RFC finding, arguing that there is substantial evidence that Plaintiff is unable to physically or mentally do the work noted in that finding. In particular, Plaintiff cites the reports of Dr. Hornsby and Dr. Vogan and states that the RFC does not account for Plaintiff's need to elevate her legs and take rest periods or limitations on the use of her hands. [ECF No. 16, at 15-18]. This argument is without merit. As an initial matter, the applicable standard is not whether there is evidence to establish Plaintiff's position, but, rather, whether there is substantial evidence to support the ALJ's finding. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Thus, Plaintiff's argument that substantial evidence supports her position is misplaced. Moreover, as previously discussed, the ALJ appropriately addressed the opinions of Drs. Hornsby and Vogan (and all other medical opinions of record) and weighed them properly. Substantial evidence supports his findings, and he committed no error by declining to include greater limitations in his RFC determination.[6]

Plaintiff also alleges fault with the ALJ's evaluation of her balancing limitations. Specifically, Plaintiff cites Social Security Ruling 96-9p, which states, in relevant part that:

> Postural limitations or restrictions related to such activities as climbing ladders,

---

[5] Plaintiff's note regarding the absence of physician reports opining that Plaintiff is "not disabled" is not evidence that the ALJ's evaluation of the medical opinion evidence was erroneous. It is well-established that the ultimate issue of whether an individual is disabled within the meaning of the Act is a legal determination reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d), 416.927(d).

[6] In addition to his evaluation of the medical opinion evidence, the ALJ specifically discussed Plaintiff's alleged limitations on the use of her hands and need to elevate her legs and take rest periods and concluded that those limitations were inconsistent with the record evidence and/or incorporated into the RFC finding. See, e.g., ECF No. 9-2, at 24, 27, 31 (finding that Plaintiff's testimony that she must lie down during the day outside of a lunch break was inconsistent with physical examinations and other clinical and objective findings); id. at 25 (finding that the limitations arising from Plaintiff's carpal tunnel syndrome were more than adequately accommodated by the weight restrictions within work at the sedentary level and that the record did not support any greater limitations); id. at 25 (noting that treating physician and pain management notes contained no evidence of significant problems with gait or ambulation, and examinations did not show swelling in the ankles or feet).

> ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. In the SCO, "balancing" means maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces. If an individual is limited in balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base. However, if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base. It is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base. Consultation with a vocational resource may be appropriate in some cases.

S.S.R. 96-9p. Plaintiff argues that the ALJ failed to properly define the balancing requirements at the hearing or ask the vocational expert whether he was following the standard definition of balancing as found in the Selected Characteristics of Occupations ("SCO") in answering the hypothetical questions. [ECF No. 16, at 17-18]. This argument is without merit.

As set forth above, S.S.R. 96-9p states that postural limitations related to activities such as balancing "would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." S.S.R. 96-9p. Thus, the ALJ's inclusion of a limitation of no balancing in the RFC finding is not, in itself, inconsistent with a finding of "not disabled." Furthermore, although the RFC finding itself does not describe the balancing limitation in detail, the ALJ set forth in his opinion exactly what the limitation means. [ECF No. 9-2, at 23 n.7 & 31-32]. Specifically, after quoting the section of Ruling 96-9p distinguishing between all balancing (which may significantly erode the occupational base) and balancing as defined by the SCO, *i.e.*, "maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces," the ALJ clarified that the RFC assumed the SCO definition. See ECF No. 9-2, at 32; see also S.S.R. 96-9p (stating that a limitation on balancing on narrow, slippery, or erratically moving surfaces "would not, by itself, result in a significant erosion of the unskilled sedentary occupational base"). Thus, there is no ambiguity in the ALJ's opinion on this issue that would prevent my

meaningful review.

Although the ALJ did not provide a detailed description of the balancing limitation in his hypothetical to the VE, there is no requirement in Ruling 96-9p that he do so. Indeed, by bringing in the VE, the ALJ did precisely what Ruling 96-9p directs – *i.e.*, "consult with a vocational resource" to determine whether postural limitations such as balancing eroded the occupational base so as to preclude Plaintiff from gainful employment. As the ALJ noted, VE's are bound to follow the SCO, and the VE in this case did not identify any conflicts between the DOT and his testimony in relying on the RFC. [ECF No. 9-2, at 32]. The VE clearly testified that a limitation to no balancing would not change his opinion that there would be jobs in the national economy that an individual with the limitations posed by the ALJ could perform. [ECF No. 9-3, at 66-68]. Further, as Defendant notes, none of the jobs identified by the VE contain a balancing requirement. See ECF No. 18, at 17 (citing DOT 379.367-010 (surveillance system monitor); DOT 249.587-018 (document preparer); and DOT 739.687-182 (table worker)).

For all of these reasons, I find that the ALJ properly followed the regulations and Ruling 96-9p in his treatment of Plaintiff's postural limitations[7] in the RFC finding, and remand is not warranted on this issue.

**D. WHETHER THE ALJ IMPROPERLY DISREGARDED THE TESTIMONY OF THE VE AND RELIED ON AN INCOMPLETE HYPOTHETICAL QUESTION**

Plaintiff argues that the ALJ improperly disregarded the testimony of the VE that, to keep a job, an individual would not be able to be off task more than ten percent of the work day, would not be permitted to miss more than one day of work per month, and would only be able to lie down up to one hour fifteen minutes during breaks. [ECF No. 16, at 18-19]. Plaintiff also contends that

---

[7] Ruling 96-9p also addresses the possible effect of stooping limitations on the occupational base. S.S.R. 96-9p. Although Plaintiff quotes the stooping language contained in this section of 96-9p in her Brief, she only develops a specific argument as to balancing. Because Plaintiff does not make any meaningful argument as to stooping, I do not need to address stooping here. Even if Plaintiff intended to include stooping within the scope of her argument, however, that argument fails for the same reasons set forth above.

the ALJ relied on an incomplete hypothetical question because he ignored the VE's testimony that an individual with marked impairments in the ability to respond appropriately to work pressures in a usual work setting and other marked mental limitations would be unable to engage in substantial activity.  Id. (citing ECF No. 9-3, at 69-70).   I disagree.

It is well-settled that the law only requires the ALJ to include limitations supported by the record in his hypothetical question to the vocational expert.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).   As set forth above, Plaintiff's arguments that the ALJ improperly evaluated the severity of her impairments and failed to include certain limitations in his RFC finding are without merit.   Further, and in any event, the ALJ not only obtained vocational expert testimony at the hearing, but also incorporated Plaintiff's numerous non-exertional (and exertional) limitations supported by the record in his hypothetical questions to the VE.   See ECF No. 9-3, at 66-68 (describing a hypothetical person limited to, inter alia, understanding, remembering, and carrying out simple instructions and performing simple, routine tasks; no work-related contact with the public, only occasional and superficial interaction with co-workers, and no more than occasional supervision; and a low-stress work environment, which means no production rate pace work, but, rather, goal oriented work with only occasional and routine changes in work setting).   In response to the ALJ's questioning, the VE concluded that there was work in the local and national economy that such an individual could perform.  Id. at 67.  As explained fully in the preceding sections, substantial evidence supports the ALJ's conclusion that Plaintiff did not have any greater limitations.

Because the ALJ properly considered Plaintiff's limitations supported by the record, including limitations related to her mental impairments, I find no error on this issue.

**E.  WHETHER THE ALJ ERRED IN EVALUATING PLAINTIFF'S SUBJECTIVE COMPLAINTS OF PAIN**

In two cursory paragraphs, Plaintiff contends that the ALJ failed to show a rational basis

for discounting Plaintiff's subjective complaints of pain and that substantial evidence supports those complaints. [ECF No. 16, at 19-20]. In addition to being conclusory, Plaintiff's argument lacks substantive merit.

Pursuant to 20 C.F.R. §§ 404.1529 and 416.929, the Commissioner must consider all "symptoms, including pain," in the disability determination. Statements of pain alone, however, are not enough to establish a disability; the claimant must also present objective medical evidence to show that the medical impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a); 416.929(a); S.S.R. 96-7p. Once the Commissioner has determined from the "medical signs or laboratory findings" that the claimant has an impairment which could reasonably produce the pain, the Commissioner must evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine how the pain limits the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); S.S.R. 96-7p. In determining the limits on the claimant's capacity for work, the Commissioner will consider the entire case record, including evidence from the treating, examining and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 96-7p. The Commissioner also will look at inconsistencies between the claimant's statements and the evidence presented. 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible. See Burns v. Barnhart, 312 F.3d 113, 129–30 (3d Cir. 2002). Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence he rejects and the reasons for discrediting such evidence. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). Ordinarily, an

ALJ's credibility determination is entitled to great deference. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

Plaintiff's assertion that the ALJ improperly discounted her pain complaints is incorrect. To the contrary, the ALJ considered Plaintiff's complaints of pain in accordance with the regulations and properly concluded that those complaints were not fully credible and did not limit plaintiff's ability to perform sedentary work. [ECF No. 9-2, at 24-30]. The ALJ directly addressed Plaintiff's allegations that her impairments caused severe pain and did not reject her allegations entirely. Rather, the ALJ incorporated numerous limitations related to Plaintiff's pain complaints in his RFC finding. See id. at 23 (RFC finding containing limitations on, inter alia, balancing, stooping, climbing, kneeling, crouching, crawling, standing, and pushing, pulling, and operating foot controls). The ALJ thoroughly analyzed the medical evidence, including Plaintiff's medication and treatment history, citing numerous records that were inconsistent with a finding of totally disabling pain. See id. at 24-30 and medical records cited therein. The ALJ also discussed the fact that Plaintiff's self-reported activities of daily living were inconsistent with an individual experiencing totally debilitating symptomology. Id. at 27. For example, Plaintiff reported that she was able to care for her personal needs, prepare meals, do dishes and laundry, drive, shop in stores, read, spend time on the computer, watch television, and walk for exercise. See id. at 27 and exhibits cited therein.

For all of these reasons, I find that substantial evidence supports the ALJ's ruling and his rejection of parts of Plaintiff's testimony as not fully credible. See Burns, 312 F.3d at 130.

### III.      CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINA LOUISE ELLENBERGER,   )
                                                  )
              Plaintiff,          )
                                                  )
     vs.                          )   Civil Action No.   16-1315
                                                  )
NANCY A. BERRYHILL, Acting         )
Commissioner of Social Security,[1]   )
                                                  )
             Defendant.         )
                                                  )

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 23rd day of October, 2017, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment [ECF No. 15] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 17] is GRANTED.

                                        BY THE COURT:

                                        /s/ Donetta W. Ambrose
                                        Donetta W. Ambrose
                                        U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).